UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOSEPH H. WOLFE,

             Plaintiff,

      v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

             Defendant.

**REPORT AND RECOMMENDATION**

12-CV-987
(NAM/VEB)

---

## I. INTRODUCTION

In November of 2007, Plaintiff Joseph H. Wolfe applied for disability insurance benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since that time due to various physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through his attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence Hasseler, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On June 26, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The procedural history may be summarized as follows:

On November 26, 2007, Plaintiff applied for disability insurance benefits under the Social Security Act, alleging that he had been unable to work since November 5, 2007. (T at 30, 98-101).[2] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Canton, New York, on April 28, 2010, before ALJ Thomas P. Tielens.[3] (T at 26). Plaintiff appeared with an attorney and testified. (T at 30-47).

On May 21, 2010, ALJ Tielens issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 9-25). The ALJ's decision became the Commissioner's final decision on April 20, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, by and through counsel, timely commenced this action by filing a Complaint on June 18, 2012. (Docket No. 1). The Commissioner interposed an Answer on October 15, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on December 6, 2012. (Docket No. 11). The Commissioner filed a Brief in opposition on February 21, 2013. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[2] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3] Plaintiff and his counsel appeared in Canton. The ALJ presided via videoconference from Syracuse, New York. (T at 12).

2

accompanied their briefs with a motion for judgment on the pleadings.[4]

There was a status conference held on May 23, 2013, with Magistrate Judge David Peebles, wherein the possibility of oral argument was discussed, with such argument to be scheduled if the Magistrate Judge felt it was necessary. Having reviewed the record throughly and having considered the arguments of counsel, this Court finds oral argument, at this point, unnecessary. For the reasons below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

## II. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

---

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

   **1.     Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 5, 2007 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2013. (T at 14). The ALJ found that Plaintiff had the following "severe" impairments, as defined under the Social Security Regulations: degenerative disc disease lumber spine; degenerative disc disease cervical spine; history of right shoulder surgery; and depression. (T at 14-15). The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 15-16).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 CFR §404.1567 (b), except that he could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; had a mild, bilateral limitation with

5

respect to hearing; and should avoid concentrated exposure to noise.  The ALJ also determined that Plaintiff was limited to simple, repetitive, and routine tasks. (T at 16-20).

The ALJ determined that Plaintiff could not perform his past relevant work as a maintenance mechanic and supervisor. (T at 20).  However, considering Plaintiff's age (48 on the alleged onset date), education (high school), and RFC, the ALJ concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 20-21).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as that term is defined under the Act, from the alleged onset date (November 5, 2007) through the date of the ALJ's decision (May 21, 2010), and was therefore not entitled to benefits. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on April 30, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2. Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  He offers three (3) principal arguments.  First, Plaintiff contends that the Commissioner failed to properly weigh the opinions of his treating physician and chiropractor.  Second, Plaintiff argues that the ALJ's RFC determination was flawed because it did not include a function-by-function assessment.  Third, Plaintiff challenges the ALJ's credibility assessment. This Court will address each claim in turn.

### a. Treating Physician and Chiropractor

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. Jayany Jhaveri treated Plaintiff for back, neck, and shoulder pain on numerous occasions over two and a half years. In May of 2008, Dr. Jhaveri completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form, in which he opined that Plaintiff was limited to lifting/carrying less than 10 pounds and standing/walking for less than 2 hours in an 8-hour workday. (T at 201). He concluded that Plaintiff was required to periodically alternate between sitting and standing to relieve pain

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

and discomfort and was limited with respect to pushing and pulling in both upper and lower extremities. (T at 202). In the section of the form that asked him to describe the medical/clinical findings that supported his conclusions, Dr. Jhaveri indicated "x-rays and tests." (T at 202). He also assessed an 18% hearing loss. (T at 203). Dr. Jhaveri opined that Plaintiff's pain was present to such an extent as to be distracting to the adequate performance of daily activities or work. (T at 205).

Dr. Robert Klein, Plaintiff's chiropractor, completed a Medical Source Statement in November of 2009, in which he opined that Plaintiff could occasionally lift/carry 10 pounds, frequently lift/carry less than 10 pounds, stand/walk for less than 2 hours in an 8-hour workday, and sit for less than about 6 hours in an 8-hour workday. (T at 360-61). Dr. Klein reported that Plaintiff's pain was present and incapacitating. (T at 364).

The ALJ did not state expressly what weight he afforded to Dr. Jhaveri's opinion, but it was certainly afforded little weight. The ALJ described Dr. Jhaveri as Plaintiff's "workers' compensation doctor" and opined that he was "clearly [Plaintiff's] advocate." (T at 18). The ALJ found "little support" in the record for the treating physician's assessment. (T at 18). The ALJ gave "no weight" to Dr. Klein's opinion, finding Dr. Klein's assessment insufficiently supported and noting that Plaintiff had discontinued chiropractic care as counterproductive. (T at 18).

This Court finds that the ALJ did not properly weigh these opinions or develop the record. First, the ALJ does not appear to have considered the fact that the treating providers' opinions' consistency with each other is itself evidence of disabling limitations. In other words, the fact that the treating physician's opinion and treating chiropractor's assessment were consistent is a significant indication that Plaintiff has disabling limitations,

8

even if neither opinion would be sufficient to sustain a finding of disability considered in isolation. Because Dr. Klein is a chiropractor, his opinion is not entitled to any special weight by itself.[7] However, when considered in light of its consistency with Dr. Jhaveri's assessment (which is entitled to enhanced weight), the opinion becomes more significant.

Second, the ALJ did not cite any evidence to support his conclusion that Dr. Jhaveri is "clearly" Plaintiff's "advocate." (T at 18). Thus, this Court cannot review the ALJ's conclusion, which certainly formed a material (if not the primary) part of his rationale for discounting Dr. Jhaveri's opinion. The ALJ's bold claim, which implicitly calls into question the physician's professional integrity, required some evidentiary explanation.

Third, the ALJ's assessment of Plaintiff's x-ray and MRI results was flawed. The ALJ noted that Plaintiff's x-ray of November 13, 2007 showed "<u>mild</u> degenerative disc disease." (T at 18)(emphasis original). The ALJ also referenced a July 15, 2008, MRI that showed "a <u>small</u> left paracentral disc protrusion <u>mildly</u> impressing the thecal sac and the left S1 nerve root; and <u>mild</u> central canal stenosis at L4-5 with a <u>minimal</u> diffuse bulging disc." (T at 18)(emphasis original). The ALJ noted that a May 2009 x-ray showed "<u>mild</u> degenerative disc disease at L5-S1." (T at 18). The ALJ, through his emphasis, clearly believed that the "mild" findings contradicted Plaintiff's claims of disabling pain and undermined Dr. Jhaveri's assessment. However, the ALJ is not a medical professional

---

[7]Not all treating health care providers are considered "treating sources" under the applicable Regulations. A "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." 20 C.F.R. § 404.1502.
     There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Chiropractors and physician's assistants are not included among the "acceptable medical sources" and their opinions are not entitled to any special weight. Rather, chiropractors and physician's assistants are listed among the "other medical sources," whose opinion may be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).

and is not in a position to opine as to whether abnormalities characterized as "mild" in an MRI or x-ray report might nevertheless cause significant pain or other limitations. Dr. Jhaveri made reference to "x-rays and tests" in his medical source statement, citing them in support of his findings. (T at 202). This indicates that Dr. Jhaveri, a treating physician, believed the mild findings were not inconsistent with disabling pain. It is well settled in the Second Circuit, that "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998). The ALJ "is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who submitted an opinion or testified before him." Id. (quoting McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir.1983)); see Filocomo v. Chater, 944 F. Supp. 165, 170 (E.D.N.Y.1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in his own evaluations of the medical findings.").

Fourth, the ALJ placed undue emphasis on two opinions provided by physicians who examined Plaintiff on a single occasion. Dr. Michael Owen, a neurosurgeon, examined Plaintiff on March 21, 2008. Dr. Owen described his examination as "normal," but indicated that he did not believe it was "possible to make any reasonable diagnosis" without imaging studies. (T at 365). The ALJ recognized this limitation to Dr. Owen's assessment, but then noted that the MRI studies "were performed a few months later and showed mild or minimal findings . . . ." (T at 19). Again, it was not proper for the ALJ to interpret the MRI findings or to speculate as to how Dr. Owen would have interpreted them. Moreover, Dr. Owen's report should have been afforded only limited evidentiary weight, as he only examined Plaintiff once and declined to make any diagnosis or assessment of Plaintiff's limitations.

10

Dr. Mary Flimlin, a spine specialist, examined Plaintiff on May 7, 2009. Dr. Flimlin reported that she was "unable to explain the severity of his pain and the paresthesias in his lower extremities." (T at 307). The ALJ considered this finding as supportive of his decision to discount Plaintiff's claims of disabling pain. (T at 19). However, Dr. Flimlin did not say that Plaintiff's complaints of pain and parethesias (i.e. a tingling feeling and numbness) were not credible, rather she was simply unable to explain their cause. Moreover, Dr. Flimlin remarked on the poor quality of certain of Plaintiff's MRI results (T at 306) and recommended further studies to "rule out any generalized neuropathic process." (T at 307). Dr. Flimlin also proposed L4-5 facet injections, which are used to reduce the inflammation and swelling of tissue in the joints located between each set of vertebrae in the spine. (T at 307). Thus, on balance and considered in context, Dr. Flimin's report does not provide much support for the ALJ's assessment.

Fifth and finally, the ALJ discounted Dr. Jhaveri's opinion as insufficiently supported without adequately developing the record. (T at 18). The ALJ noted that Dr. Jhaveri's assessment referenced shoulder pain and reconstruction without a diagnosis or discussion of degenerative disc disease. (T at 18). However, there is no indication the ALJ re-contacted the physician for an explanation. The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. <u>Colegrove v. Comm'r of Soc. Sec.</u>, 399 F. Supp.2d 185, 196 (W.D.N.Y.2005); <u>see</u> also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and

laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Accordingly, this Court finds that a remand is necessary for further development of the record. Dr. Jhaveri should be re-contacted and asked to address the gaps noted by the ALJ and provide a more particularized statement of his views concerning the MRI and x-ray finding.

### b. RFC

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y.1990).

Here, the ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 CFR §404.1567 (b), except that he could only

occasionally climb ramps, stairs, ladders, ropes, and scaffolds; had a mild, bilateral limitation with respect to hearing; and should avoid concentrated exposure to noise. The ALJ also determined that Plaintiff was limited to simple, repetitive, and routine tasks. (T at 16-20).

An ALJ's RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. SSR 96-8p. In particular, the ALJ must make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch, based on medical reports from acceptable medical sources that include the sources' opinions as to the claimant's ability to perform each activity. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F.Supp.2d 145, 150 (N.D.N.Y.1999). Only after that analysis is completed, may RFC be expressed in terms of the exertional levels of work - e..g, sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F. Supp.2d 347, 354 (W.D.N.Y.2007).

Plaintiff notes, correctly, that the ALJ did not outline his specific exertional limitations on a "function by function" basis before finding that Plaintiff retained the RFC to perform light work. Until recently, courts in the Second Circuit were divided on the question of whether the failure to perform a "function-by-function" analysis was a *per se* reason for remand. See Knighton v. Astrue, 861 F. Supp. 2d 59, 66 (N.D.N.Y. 2012) (collecting cases). In Knighton, this Court expressed the view that the absence of a function-by-function analysis should be grounds for remand only where it frustrates meaningful review of a material aspect of the claimant's case. In a very recent decision, the Second Circuit adopted the same view and declined to endorse an automatic remand rule. See Cichocki

13

v. Astrue, – F.3d –, 2013 WL 4749644, at *4 (2d Cir. Sep. 5, 2013)("Adopting a per se rule that these functions must be explicitly addressed on pain of remand (no matter how irrelevant or uncontested in the circumstances of a particular case) would thus not necessarily ensure that all relevant functions are considered.").

Thus, the absence of a function-by-function assessment here is not a *per se* reason for remand. However, given the need for a remand to address the deficiencies outlined above related to the consideration of the treating providers' opinion, this Court finds that a function-by-function assessment should certainly be performed on remand.

### c. Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis

14

v. Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No.

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: He last worked in 2007 as a maintenance mechanic at a paper mill. (T at 31-32). Plaintiff had been employed at the mill for 19 years. (T at 31). He injured his back and neck in November of 2007 and had not been able to work since. (T at 33). Plaintiff experiences daily, constant pain in his lower back and neck. (T at 37). Walking aggravates the pain. (T at 37). Two to three times a week, Plaintiff experiences muscle spasms in his lower back. (T at 37). He uses a walking cane for support. (T at 38). Occasionally, his pain is so overwhelming that he must sit or lay down. (T at 38). He has limited range of motion in his neck. (T at 38). Plaintiff also experiences pain in his right shoulder arising from an 2005 hunting accident. (T at 39-40). He takes anti-depressants to address irritability and lethargy. (T at 43). He can sit for about 30 minutes and stand for approximately 15-20 minutes (provided he is moving). (T at 43). He is limited to walking about 300 feet and cannot lift more than 10 pounds. (T at 44).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were "inconsistent" with the RFC determination. (T at 18).

The ALJ's credibility assessment is problematic in three respects. First, while a "claimant's credibility may be questioned if it is inconsistent with the medical evidence . . . , it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." Gehm v. Astrue, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 2, 2013); see also Patterson v. Astrue, No. 11-CV-1143, 2013 WL 638617,

at *14 (N.D.N.Y. Jan. 24, 2013)("This assessment of plaintiff's credibility is formed only on the basis of how plaintiff's statements compare to the ALJ's RFC assessment. The ALJ's analysis is therefore fatally flawed, because, it demonstrates that she improperly arrived at her RFC determination before making her credibility assessment, and engaged in a credibility assessment calculated to conform to that RFC determination.").

Second, Plaintiff's work history is excellent (including 19 years of demanding work at a paper mill) and his credibility should have been afforded enhanced weight on that basis. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

Third, Plaintiff's complaints of disabling pain were supported by the assessment of his treating providers. For the reasons outlined above, the record was not adequately developed and the ALJ did not properly review the opinions of those providers. As such, Plaintiff's credibility should be revisited on remand following further development of the record.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is

recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

This Court recommends that Plaintiff be GRANTED judgment on the pleadings, that the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: October 16, 2013

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy

of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

19

Dated: October 16, 2013

      Syracuse, New York